UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WEST HILL FARMS, LLC, et al

        Plaintiff,

v.

        Case No. 17-cv-13247

        HON. MARK A. GOLDSMITH

GEOSTAR CORP., et al,

        Defendants,

_____/

**OPINION & ORDER**
**GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE (Dkt. 13)**

This matter is before the Court on Defendants' motion to dismiss or, in the alternative, transfer venue (Dkt. 13). The issues were fully briefed, and a hearing was held on June 28, 2018. For the reasons that follow, the Court finds that it lacks personal jurisdiction over the individual Defendants and transfers this action to the Middle District of Florida.

**I. BACKGROUND**

In 2006, Plaintiffs – West Hill Farms, LLC; MacDonald Stables, LLC; Jaswinder Grover; and Monica Grover – initiated litigation, the so-called ClassicStar Litigation, in the Eastern District of Kentucky against some of the Defendants:[1] GeoStar, Tony Ferguson, and Thom Robinson. Am.

---

[1] The Defendants are GeoStar Corporation; Tony Ferguson; Deborah Ferguson; Thom Robinson; Penny Robinson; Great Lakes Geophysical, Inc.; Brookstone Development Ltd., Inc.; Riverside Equities, LLC; and Great Lakes Geophysical, LLLP. According to the complaint, the individual Defendants held various leadership positions in one or more of the corporate Defendants at all relevant times.

1

Compl. ¶ 20 (Dkt. 7). Plaintiffs moved for summary judgment against these Defendants in 2010, which the district judge indicated would be granted in August 2011. Id. ¶¶ 21-22.

Plaintiffs allege that Tony Ferguson "determined to form" Defendant Great Lakes Geophysical, LLLP ("GLG LLLP") on September 21, 2011, and "determined" his spouse, Deborah Ferguson, to be the nominal controlling person of the LLLP. Id. ¶ 23. Summary judgment was granted in the ClassicStar Litigation on September 30, 2011. Id. Following the formation of GLG LLLP, according to Plaintiffs, GeoStar, Tony Ferguson, and Thom Robinson caused Great Lakes Geophysical, Inc. ("GLG Inc."), a wholly-owned subsidiary of GeoStar, to transfer substantially all of its assets to GLG LLLP for no cash or other adequate consideration. Id. ¶¶ 26-27. Between November 1, 2011 and July 31, 2014, GLG LLLP received more than $20 million in cash from GLG Inc. Id. ¶ 28.

Also around September 21, 2011, counsel for Geostar wrote to Plaintiffs' counsel and stated that GLG Inc. would be sold to a business called Mitcham Industries. Id. ¶ 29. In actuality, Geostar had "paid Mitcham Industries $75,000 for the benefit of" GLG Inc.[2] Id. ¶ 30. In the following months, Geostar employees were conducting business of GLG LLLP. Id.

In September 2015, after two years of collection efforts, Plaintiffs received access to certain documents of Defendants. Id. ¶ 32. From these documents, Plaintiffs realized that Defendants had a plan to transfer Geostar assets to Defendant Brookstone or Defendant Riverside as early as

---

[2] Defendants disagree. They claim that GLG Inc. received a letter from Mitcham on September 9, 2011 demanding owed funds in the amount of $551,453.45. GLG Inc. could no longer feasibly operate, so it sold its assets to GLG LLLP. GLG LLLP assumed the debts of GLG Inc. and agreed to pay GLG Inc. 25% of its 2012 and 2013 profits. See Mot. to Dismiss at 3-4, PageID.161-162 (Dkt. 13).

2009.[3] Id. ¶¶ 34-36. Plaintiffs also discovered that Geostar and Brookstone were affiliated entities under common control and that there was "a degree of interchangeability between Riverside and Geostar." Id. ¶ 37.

Plaintiffs brought suit under the Court's diversity jurisdiction, asserting claims for fraudulent conveyance and voidable transfer. The individual Defendants brought this motion for lack of personal jurisdiction and/or forum non conveniens or, in the alternative, transfer of venue. The corporate Defendants join in the motion to the extent it requests dismissal for forum non conveniens or a transfer of venue. For the reasons that follow, the Court finds that it has no jurisdiction over the individual Defendants and grants Defendants' alternate request for relief and transfers the action to the Middle District of Florida.

## II. STANDARD OF REVIEW

Two statutes allow district courts to transfer venue: 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406(a). "Section 1404(a) permits a transfer to any district where the case could have been brought for the convenience of parties and witnesses and in the interest of justice," while "Section 1406(a) enables a district court to transfer venue in the interest of justice when venue is improper in the original forum to any district or division in which it could have been brought." Global Crossing Telecommunications, Inc. v. World Connection Group, Inc., 287 F. Supp. 2d 760, 763 (E.D. Mich. 2003) (internal quotation marks omitted) (footnote omitted). A court may not transfer venue under

---

[3] Defendants also disagree here. They claim that Brookstone and Riverside made loans to Geostar to support its development of certain assets in Australia. Brookstone and Riverside are both owned by trusts, the beneficiaries of which are companies in which Penny Robinson and her children are partial owners. Thom Robinson is not an owner of either, although he was President of Brookstone for a time. See Def. Mot. to Dismiss at 5, PageID.163.

§ 1404(a) if the court lacks jurisdiction over a defendant, but it may transfer venue under § 1406(a) even if it lacks personal jurisdiction. Id. at 763-764. Thus, the Court must first consider whether it has personal jurisdiction over Defendants.

When presented with a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), a court may decide the motion on the basis of written submissions and affidavits alone. See Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989). When a court decides to pursue that path, the plaintiff must meet a "relatively slight" burden of a prima facie showing that personal jurisdiction exists to survive the motion. Estate of Thompson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 360 (6th Cir. 2008). The plaintiff can do so by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." Lexon Ins. Co. v. Devinshire Land Dev., LLC, 573 F. App'x 427, 429 (6th Cir. 2014). The court must view the pleadings and affidavits in the light most favorable to the plaintiff, Estate of Thompson, 545 F.3d at 360, and may only dismiss if the specific facts alleged by the plaintiff collectively fail to make a prima facie case for jurisdiction, CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996). "A federal court's exercise of personal jurisdiction in a diversity of citizenship case must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 888 (6th Cir. 2002).

Michigan's long-arm statute has been construed "to bestow the broadest possible grant of personal jurisdiction consistent with due process." Audi AG & Volkswagon of Am., Inc. v. D'Amatom, 341 F. Supp. 2d 734, 741 (E.D. Mich. 2004). The statute extends both general and

limited jurisdiction over nonresident individuals and corporations. See Mich. Comp. Laws § 600.701 (general, individuals); Mich. Comp. Laws § 600.705 (limited, individuals); Mich. Comp. Laws § 600.711 (general, corporations); Mich. Comp. Laws § 600.715 (limited, corporations). Limited personal jurisdiction for particular claims may be established where the claims derives from a tortious act or consequence within the state. Mich. Comp. Laws § 600.705(2).

The Due Process Clause requires that a defendant have sufficient "minimum contacts" with the forum state, such that a finding of personal jurisdiction does not "offend traditional notions of fair play and substantial justice." Conn v. Zakharov, 667 F.3d 705, 712 (6th Cir. 2012). "There are two kinds of personal jurisdiction within the Federal Due Process inquiry: (1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state." Id. at 712-713.

### III. ANALYSIS

#### A. Personal Jurisdiction

The Court will first determine whether it has personal jurisdiction over individual Defendants Tony Ferguson, Deborah Ferguson, Thom Robinson, and Penny Robinson. Defendants present two arguments regarding personal jurisdiction: (i) the allegations against Mrs. Ferguson and Mrs. Robinson are not sufficient to satisfy Michigan's long-arm statute, and (ii) the exercise of personal jurisdiction against any of the individual Defendants would not comport with due process.

##### i. Mrs. Ferguson and Mrs. Robinson

Defendants argue that the allegations against the wives are not sufficient to fall under Michigan's long-arm statute. Regarding Mrs. Ferguson, Plaintiffs have laid out in their briefing that: (i) she is the owner and designated General Partner and Manager of GLG LLLP; (ii) that she has owned property and transacted business in Michigan; (iii) that she was a named debtor in a UCC financing statement filed in Michigan in 2012; (iv) that she admitted that she traveled to Michigan with her husband for the purpose of doing business for GLG, Inc.; and (v) that she caused assets to be transferred to avoid payment to Plaintiffs. Regarding Mrs. Robinson, Plaintiffs have laid out in their brief that: (i) she was the designated Secretary and Treasurer of Brookstone and Manager of Riverside; (ii) she caused assets to be transferred to avoid payment to Plaintiffs; (iii) she engaged in a contract governed by Michigan law; (iv) there was a "degree of interchangeability" between Riverside and Geostar; (v) and she sold a condominium in Michigan for over $1 million in 2016, as trustee of Riverside Equities Trust. See Pl. Resp. at 9-11, PageID.257-259 (Dkt. 15).

Plaintiffs have failed to show that Michigan's long-arm statute captures Mrs. Ferguson and Mrs. Robinson. Under Mich. Comp. Laws § 600.705(2), Michigan courts may take personal jurisdiction over a person when an action performed by them has "[done or caused] an act to be done, or consequences to occur, in the state resulting in an action for tort." Plaintiffs first allege, for each woman, that their positions in leadership roles in their respective corporations play a part in the analysis, but "jurisdiction over a corporate officer cannot be predicated merely upon jurisdiction over the corporation." Balance Dynamics Corp. v. Schmitt Industries, Inc., 204 F.3d 683, 697 (6th Cir. 2000).

Plaintiffs next allege, for Mrs. Ferguson, that she owned property and transacted business within the state; the latter would be sufficient to establish jurisdiction under Mich. Comp. Laws § 600.705(1) if the contacts gave rise to the claim. However, the record does not even show that Mrs. Ferguson transacted business within the state. As support, Plaintiffs point to deposition transcripts showing: (i) Great Lakes Geophysical had an office in Mount Pleasant, Michigan and (ii) Mrs. Ferguson owned Great Lakes Geophysical, LLP. Pl. Resp. at 9, PageID.257. This does not establish that Mrs. Ferguson personally transacted any business within the state. Even if it did, there is no indication from the record that Mrs. Ferguson's transacting of business in the state gave rise to this claim. See 800537 Ontario Inc. v. Auto Enterprises, Inc., 113 F. Supp. 2d 1116, 1124-1125 (E.D. Mich. 2000) (finding that the contacts alleged by Plaintiffs as constituting "the transaction of any business within the state" did not give rise to the cause of action, and thus finding that the long-arm statute did not capture Defendants).

Facts (iii) and (iv)[4] from Plaintiffs' briefing for Mrs. Ferguson, laid out above, do not relate to this specific action; they are allegations that might be relevant in a general jurisdiction analysis, but Plaintiffs have not argued that the Court has general jurisdiction over the women. See Pl. Resp. at 16-19, PageID.264-267 (arguing that the court should exercise specific personal jurisdiction and citing Mich. Comp. Laws § 600.705). Regarding the fifth fact alleged, Plaintiffs have not sufficiently alleged that the act or the injury caused by the act took place in Michigan,

---

[4] In their response, Plaintiffs allege that Mrs. Ferguson "admitted that she traveled to Michigan with her husband for the purpose of doing business for Great Lakes Geophysical." Pl. Resp. at 9, PageID.257. This misstates the record, as Mrs. Ferguson testified, at most, that her husband did business while they were in Michigan. See Ferguson Tr., Ex. 3 to Pl. Resp. at 73, PageID.303 (Dkt. 15-4).

7

and "[t]o be subject to personal jurisdiction under the doing-or-causing-to-be-done prong of the statute, the defendant's purported tortious conduct or the injury alleged must have occurred in Michigan." Karanja v. Woodbridge Corp., No. 17-10389, 2017 WL 5192255, at *2 (E.D. Mich. Nov. 9, 2017), citing Green v. Wilson, 565 N.W.2d 813, 817 (Mich. 1997). There is no allegation here that the allegedly illicit transfers took place in Michigan, nor are there any allegations that Plaintiffs, none of whom is a resident of Michigan, were actually injured in Michigan. Accordingly, there is no basis for personal jurisdiction over Mrs. Ferguson in Michigan. The same is true for Mrs. Robinson: there is no allegation that the transfer or the injury that resulted took place in Michigan, and the remaining facts alleged are not related to the illicit action alleged.

Plaintiffs also allege that the organizational conduct of the women's respective organizations can be imputed to them by piercing the corporate veil. But Plaintiffs' complaint does not allege many of the necessary factors needed to pierce the corporate veil,[5] instead stating legal conclusions with no support, such as "Defendants Deborah Ferguson, Penny Robinson, GLG LLLP, Brookstone Development, Ltd., Inc. and Riverside Equities, LLC, are merely instrumentalities of the Judgment Debtors and used to avoid liability to creditors, including

---

[5] Michigan courts will not pierce the corporate veil unless (i) the corporate entity was a mere instrumentality of another entity or individual, (ii) the corporate entity was used to commit a fraud or wrong, and (iii) the plaintiff suffered an unjust loss. Needa Parts Mfg., Inc. v. PSNet, Inc., 635 F. Supp. 2d 642, 647 (E.D. Mich. 2009). Courts analyze the first prong by considering (1) whether the corporation is undercapitalized, (2) whether separate books are kept, (3) whether there are separate finances for the corporation, (4) whether the corporation is used for fraud or illegality, (5) whether corporate formalities have been followed, and (6) whether the corporation is a sham. Glenn v. TPI Petroleum, Inc., 854 N.W.2d 509, 520 (Mich. Ct. App. 2014).

Judgment Creditors." Am. Compl. ¶ 52.[6] When confronted with these deficiencies, Plaintiffs merely respond that they need not prove a corporate veil-piercing theory because Defendants are liable for the torts they committed, and "when a corporate officer has personally or actively committed a tort, it is unnecessary to pierce the corporate veil to hold the officer liable." Pl. Resp. at 13, PageID.261.

Plaintiffs have not pleaded sufficient facts to pierce the corporate veil. It should be noted that corporate Defendants do not seek dismissal on jurisdiction grounds, and thus have effectively conceded that jurisdiction is proper in this Court. But the individual Defendants are not subject to the Court's jurisdiction merely because the corporate Defendants are, see Balance Dynamics Corp., 204 F.3d at 697, and, as discussed above, at least Mrs. Ferguson and Mrs. Robinson are not otherwise subject to the Court's jurisdiction. Thus, in order to bring Mrs. Ferguson and Mrs. Robinson into Michigan, Plaintiffs must pierce the corporate veil and hold them accountable for the corporate actions. See Flagstar Bank, FSB v. Centerpointe Financial, Inc., Case No. 10-14234, 2011 WL 2111984, at *2 (E.D. Mich. May 26, 2011) ("[B]ecause it is clear that Centerpointe consented to submit to personal jurisdiction in Michigan, the Court could have jurisdiction over

---

[6] There is a presumption against piercing the corporate veil, and it should not be pierced when the party seeking to do so has not adequately shown it should be done. See TNR Indus. Doors, Inc. v. PetrforMax Group, LLC, No. 13-13815, 2014 WL 2800750 at *4 (E.D. Mich. June 17, 2014) ("[T]here is a presumption against piercing the corporate veil, and this Court will not pierce the veil unless the moving party provides the appropriate standard for disregarding the corporate entity and applies that standard to the facts at hand.")

9

the Defendants, former officers of Centerpointe, by 'piercing the corporate veil.'"). By failing to plead the factors necessary to pierce the corporate veil, they have failed to do so.[7]

Additionally, to satisfy the first prong of piercing the corporate veil, "the proponent of veil-piercing must show something more—for instance, that the corporation's principals have done something to subvert the interests of the corporation—in order to satisfy the requirement that the corporation was used as a 'mere instrumentality' of the individual." JKL IP Company v. Creative Forces Group, Inc., No. 16-11941, 2016 WL 9445461, at *6 (E.D. Mich. Dec. 6, 2016). No additional facts to support veil-piercing have been provided beyond the supposed fraud against Plaintiffs, and so Plaintiffs have not presented enough to support that claim. See Green v. Ziegelman, 873 N.W.2d 794, 807 (Mich. Ct. App. 2015) ("But it bears repeating that establishing an entity for the purpose of avoiding personal responsibility is not by itself a wrong that would warrant disregarding the entity's separate existence.").

Plaintiffs also argue that the Court has personal jurisdiction on a co-conspirator theory. Personal jurisdiction based on conspiracy requires: (1) a prima facie factual showing of conspiracy,

---

[7] Exercise of alter ego jurisdiction is another method to pierce the corporate veil. See Estate of Thompson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide, 545 F.3d 357 (6th Cir. 2008) ("Courts in this Circuit, in several unpublished opinions, have endorsed the use of the alter-ego theory to exercise personal jurisdiction. . . . These cases are in line with other federal cases permitting courts to 'pierce the corporate veil' of the subsidiary and impute personal jurisdiction from the subsidiary to the parent.") (internal quotation marks omitted). Plaintiffs have made a plausible argument, including their allegation that there is a "degree of interchangeability between Riverside and GeoStar," Pl. Resp. at 11, PageID.259, that GLG Inc., GLG LLLP, Brookstone, and Riverside are alter egos of GeoStar, such that the corporate veil could be pierced with respect to corporate Defendants. But that is not the question at hand, because corporate Defendants are not challenging the personal jurisdiction of this Court; only the individual Defendants are. For the reasons stated, the pleadings and the briefing have not made a sufficient showing that the corporations were mere instrumentalities of the individuals to warrant piercing the corporate veil.

(2) allegation of specific facts warranting the inference that the defendant was a member of the conspiracy, and (3) showing that the defendant's co-conspirator committed a tortious act pursuant to the conspiracy in the forum. Plastic Film Corp. of Am. v. Unipac, Inc., 128 F. Supp. 2d 1143, 1146 (N.D. Ill. 2001). But the complaint contains no mention of conspiracy, and thus the Court cannot take jurisdiction on this theory.

For these reasons, Mrs. Ferguson and Mrs. Robinson are not subject to the personal jurisdiction of this Court.

### ii. All Individual Defendants

Defendants also argue that the exercise of jurisdiction over all the individual Defendants would not comport with due process. The Sixth Circuit has established a three-prong test for determining whether the exercise of jurisdiction comports with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Conn v. Zakharov, 667 F.3d 705, 713 (6th Cir. 2012).

The Supreme Court has held that a defendant has purposefully availed himself of the privileges of a state where "the defendant 'deliberately' has engaged in significant activities within a State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-476 (1985) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 (1984)). The Sixth Circuit has commented that the "emphasis" of this inquiry "is whether the defendant has engaged in some overt actions connecting the defendant with the forum state." Bridgeport Music. Inc. v. Still N The Water Pub., 327 F.3d

472, 478 (6th Cir. 2003). Defendants observe that Mr. Ferguson and Mr. Robinson are Florida residents who own no property, have no bank accounts, and transact no business in Michigan, and had no other meaningful contact with the State of Michigan in their individual capacities. Plaintiffs respond, without factual support, that the husbands "transacted business in Michigan, caused tortious injury in Michigan, and acting personally through one or more of the Defendant entities, fraudulently and wrongfully caused Michigan assets to be transferred from a Michigan corporation to avoid payment to" Plaintiffs. Pl. Resp. at 20, PageID.268. However, as Defendants note, Plaintiffs have provided no allegations that the transfers took place in Michigan. Further, as discussed above, the actions of the corporations have no effect on this analysis, because "jurisdiction over a corporate officer cannot be predicated merely upon jurisdiction over the corporation," Balance Dynamics Corp., 204 F.3d at 697, and Plaintiffs have not sufficiently pled facts to pierce the corporate veil. The allegations against the wives are similarly sparse. Accordingly, Plaintiffs cannot satisfy this prong of the analysis.

Next, "the cause of action must arise from the defendant's activities" within Michigan. Conn, 667 F.3d at 713. To satisfy this prong, "the plaintiff must demonstrate a causal nexus between the defendant's contacts with the forum state and the plaintiff's alleged cause of action." Beydoun v. Wataniya Rests. Holding, Q.S.C., 768 F.3d 499, 506-507 (6th Cir. 2014). Again, Plaintiffs have alleged no actions at all that took place in Michigan, and thus they cannot satisfy this prong.

The factors to be considered to determine reasonableness include "(1) the burden on the defendant; (2) the interest of the forum state; [and] (3) the plaintiff's interest in obtaining relief[.]" Schneider v. Hardesty, 669 F.3d 693, 703, 703-704 (6th Cir. 2012). The burden on

Defendants would be high considering the lack of ties in Michigan, and Michigan has relatively little interest in resolving this dispute where none of the Plaintiffs live in the state and none of the alleged illicit actions took place in the state. Thus, it would be unreasonable to exercise personal jurisdiction over Defendants.

For these reasons, the Court determines that it does not have personal jurisdiction over any of the individual Defendants.

**B. Venue**

Because the Court lacks personal jurisdiction over the individual Defendants, it will consider whether to transfer venue under 28 U.S.C. § 1406.[8] That section provides that the "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Proper venue in a diversity action is limited to:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

---

[8] Although Defendants only brought a motion to transfer venue under 28 U.S.C. § 1404, the Sixth Circuit has determined that § 1406 grants a federal court the power to transfer cases sua sponte. See Flynn v. Greg Anthony Construction Co., Inc., 95 F. App'x 726, 738 (6th Cir. 2003) (explaining that "Congress has enacted a number of statutes that give federal courts the power to transfer cases sua sponte," including 28 U.S.C. § 1406).

13

28 U.S.C. § 1391(b). As laid out above, individual Defendants do not live in Michigan and thus venue is not proper in this district under 28 U.S.C. § 1391(b)(1). Further, there has been no evidence provided that a substantial part of the events or omissions giving rise to the claim occurred in Michigan, or that any property that is the subject of the action is situated here.

On the other hand, venue is proper in Florida. All four individual Defendants live there, and all the non-defunct corporate Defendants operate from there. See Def. Mot. at 24, PageID.182. Defendants have conceded that venue is proper in the Central District of Florida. Id. Because of that, and because defendants have "not offered any good reason why the plaintiff[s] should be put to the expense of refiling [their] case in a new district, or why the facts favor dismissal over transfer," the Court will order that the case be transferred to the Middle District of Florida. Magna Powertrain De Mexico S.A. De C.V. v. Momentive Performance Materials USA LLC, 192 F. Supp. 3d 824, 831 (E.D. Mich. 2016). The Court will transfer the entirety of the action, even though corporate Defendants have not challenged the authority of the Court to hear this case. See Costaras v. NBC Universal, Inc., 409 F. Supp. 2d 897, 908 (N.D. Ohio 2005) ("The interests of justice would be served by transferring the entire case to a district where all parties may be joined in one suit rather than in severing the claims.").

### IV. CONCLUSION

For these reasons, the Court grants Defendants' motion to transfer venue (Dkt. 13) and transfers the entirety of this action to the Middle District of Florida.

SO ORDERED.

Dated: August 31, 2018　　　　　　　　　　　　s/Mark A. Goldsmith
　　Detroit, Michigan　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 31, 2018.

s/Karri Sandusky
Case Manager
